**STATE OF NEW MEXICO ex rel. David L. NORVELL, Attorney General, Plaintiff,**

v.

**Howard H. CALLAWAY, Secretary of the Army, et al., Defendants.**

**Civ. No. 74–388.**

United States District Court, D. New Mexico.

Feb. 11, 1975.

George J. Hopkins, Special Asst. Atty. Gen., David L. Norvell, Atty. Gen., Thomas L. Dunigan, William O. Jordan, Asst. Attys. Gen., Santa Fe, N.M., for plaintiff.

Victor R. Ortega, U. S. Atty., Albuquerque, N.M., James Grant, Asst. U. S. Atty., for defendants.

## MEMORANDUM OPINION

BRATTON, District Judge.

In this action the state of New Mexico seeks a declaration that it is the owner of an alleged treasure trove located within the confines of White Sands Missile Range and an order from the court compelling the defendants the Secretary of the Army, Deputy General Counsel, Department of the Army, and the Commanding General at the Range to allow plaintiff reasonable access to Section 16 of the range to remove the personalty.

The Army is in control of the land in question by virtue of a condemnation action in Cause No. 8527, under which the Army was given a leasehold interest in the real property comprising the missile range. Under the terms of that judgment in Cause No. 8527, the state remains the owner of the fee. The judgment provides that compensation is to be paid for "all of defendant's [the state] interests" in the tracts and terminates the state's interests in the tracts for the term of the lease.

Jurisdiction of the court to determine this matter is presently alleged on a variety of grounds, including federal question jurisdiction under 28 U.S.C.A. § 1331(a), federal eminent domain jurisdiction under 28 U.S.C. § 1358, mandamus jurisdiction under 28 U.S.C. § 1361, and jurisdiction under the Administrative Procedure Act, 5 U.S.C.A. §§ 701–706. Also alleged is pendent jurisdiction.

The defendants have moved to dismiss the complaint for lack of jurisdiction or, in the alternative, to grant summary judgment against the plaintiff.

The case grows out of the long-lasting legend that there is located somewhere on Victorio Peak a vast treasure of gold bars, jewels, and valuable artifacts. It has been claimed that certain people have been in the cave where the treasure is located and have seen the treasure. From time to time, the legend is revived, and public interest in the matter increases. There apparently are some people, or groups of people, within whom interest has been sustained, for the Army has regularly had contacts with such people and requests from them for permission to seek and remove the treasure.

Hoping to finally put the subject to rest, the Army in 1963 permitted a state-sponsored expedition to go onto the range and conduct an exploration. The expedition's efforts proved fruitless. They found nothing.

The legend was more durable than empirical data tending to show its chimerical nature, and, in the recent past, substantial interest in it forced the

Army to begin exploring terms and conditions upon which competing groups could be allowed onto the range to look for the treasure.

Among the groups of treasure-seekers with whom the Army had been negotiating was a group represented by F. Lee Bailey. This group had produced a gold bar taken, it claimed, from the site of the treasure, and it wanted to be allowed to be the first to go onto the range to seek the treasure. The Army declined to give any group preferential treatment, and it was in the process of negotiating with all competing groups to try to determine a fair method and order of entry onto the range to seek the treasure.

Meanwhile, the Bailey group had been in touch with state officials, representing to them that it knew the location of the treasure trove. Contracts between the state of New Mexico by its Attorney General and this group were entered into. As a result, the state was to receive twenty-five percent of anything recovered by the Bailey group in its search for the treasure.

In a state court action involving another claimant, the state, and the Bailey group, a receiver had been appointed, and the Attorney General of the state requested that the Army allow the receiver to enter the range and locate and remove the treasure. The Army denied the request, asserting that the state was attempting to give the Bailey group preferential treatment by denying consent to entry to any other applicant until the Bailey group had been given first chance to locate the treasure. The Army restated its position that whatever was done had to be fair to all applicants and that it still proposed a sequential entry procedure. It maintained that this position would not be changed and that it would advise all applicants that, because of the state's position vis-à-vis the Bailey group, it would not require the state's consent to the entry of any applicant. It had previously been understood that both the state and the Army must consent to an entry, and the 1963 expedition had been undertaken on this basis.

This action was then filed, and the matter came on for hearing upon plaintiff's application for a preliminary injunction restraining the defendants from trying to find and recover the treasure themselves. Upon the Army's assurance that it was not and would not undertake to look for the treasure, preliminary relief was denied.

The plaintiff then filed its amended complaint, seeking the relief mentioned heretofore and also requesting that a receiver be appointed to protect the personalty during the pendency of this action and the adjudication of the rights of the parties.

The condemnation documents introduced into evidence at the preliminary injunction hearing establish that the state, while remaining the owner of the Section 16 fee, gave exclusive possession to the United States for the term of the lease and further gave up the right to go into the area and take anything out for the term of the lease. This was also the testimony of the attorney for the state Commissioner of Public Lands. Hence, the state has no right of entry without the Army's permission.

■■ Further, the missile range is a "closed base" under military regulations and orders, and it is within the discretion of the commanding officer of the range to permit or deny permission to enter the range to search for treasure. Not only may he, in his discretion, exclude all persons other than those belonging on the range from it, but he may, in his discretion, admit private persons under such restrictions as he may prescribe in the interest of good order and military discipline. Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Further, under the undisputed facts of this case, the denial of permission to the state-Bailey group cannot be said to be unreasonable. The evidence establishes that this group is only one of the groups that claim to know the location of the treasure, and its refusal to consent to entry by any other group until after its group had the first chance

to look for the treasure ran contrary to the Army's attempts to work out a method of entry that would be fair to all and which in its discretion it considered would not be disruptive of the military functions going forward at the range.

■ The state contends, in this connection, that the denial is arbitrary and capricious and amounts to a denial without due process of law of its right to its personal property located on the range. However, in the condemnation proceedings, the state agreed to exclusive possession of the land by the Army during the term of the lease, so that it cannot now assert the argument that it is being denied due process.

■■ The condemnation of the leasehold interest in the land was for a military use, i. e., a missile range, and for such other uses as may be authorized by Congress or by Executive Order. A condemnation of the right to explore for treasure trove was not included, nor can it be considered as a necessary incident to the use for which the land was condemned. Where less than the fee is condemned, the use of the property must be for and in accordance with the purposes which justified its taking. United States v. Burmeister, 10 Cir., 172 F.2d 478 (1949). The Army, therefore, has no right to directly or by contract with a third party undertake the deliberate exploration of Victorio Peak to search for treasure in the absence of consent of the state, the fee owner, to any such search.

The Deputy General Counsel from the office of the Secretary of the Army testified that, before the state entered into the contracts with the Bailey group and prior to this action, the military authorities were willing to allow exploration in Section 16, if a method of doing so that was fair to all the competing groups could be agreed upon. Further, it was the Army's position that the state, as landowner, must also consent to entry by the competing groups. He also testified that the Army did not believe in the existence of the treasure, was not looking for it, and did not intend to look for it.

Based upon the evidence before the court and the conclusion herein that the Army and the state must give concurrent consent for any group to enter Section 16 or for any search for treasure to take place thereon, it is concluded that no injunction, preliminary or otherwise, need issue, provided that both sides can agree to a stipulated judgment reflecting the conclusions contained in this opinion.

Accordingly, a summary judgment will be issued in favor of the defendants against the plaintiff's complaint insofar as it seeks to compel the defendants to permit entry by the plaintiff upon White Sands Missile Range. If the defendants do not agree to the requirement of concurrent consent of the state and the Army for entry upon Section 16 to search for treasure trove, then defendants' Motion to dismiss or for summary judgment will be denied, except as set out above, and defendants shall respond to the plaintiff's complaint within the time required by the Federal Rules of Civil Procedure.